UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| *Plaintiff*, ) | |
| ) | Case No. 1:09-cr-5 |
| v. ) | Judge Mattice |
| ) | |
| KENNETH BRYAN ARMOR, ) | |
| ) | |
| *Defendant*. ) | |

## **SENTENCING MEMORANDUM**

Pending before the Court is Defendant's Motion for Downward Variance in Sentencing [Court Doc. 15]. The Court held a hearing on September 17, 2009 to address this Motion and to consider the appropriate sentence for Defendant Kenneth Bryan Armor ("Defendant"), who pled guilty, pursuant to a Plea Agreement, to one count of receiving child pornography pursuant to 18 U.S.C. § 2252A(a)(5)(B) and (b)(2).

**I.  FACTUAL AND PROCEDURAL BACKGROUND**

The United States Attorney's Office filed a one-count Bill of Information on January 23, 2009, charging Defendant with possession of material containing images of child pornography on or about May 1, 2006, in violation of 18 U.S.C. §§ 2252A(a)(5)(B) and (b)(2). (Court Doc. 1.) Defendant waived indictment and pled guilty to the Bill of Information on March 2, 2009. (Court Docs. 8 & 9.) The Court accepted the Defendant's plea of guilty, scheduled sentencing, and Defendant was taken into custody. The agreed factual basis for this offense is contained in the sealed Plea Agreement and states as follows:

On May 1, 2006, the FBI contacted the defendant about an

> allegation that he had sent child pornography over the internet. The defendant freely and voluntarily agreed to allow the FBI to seize his computer and search it. A forensic examination determined the defendant's computer contained numerous images of child pornography. These images had been received on the computer before June 2004 and March 2006. The FBI was further able to demonstrate that some of the images were of known victims and such images had been created outside the State of Tennessee. The defendant admits that he knew his computer contained images of child pornography.

(Court Doc. 9, Plea Agreement pp. 2-3.) A Presentence Investigation Report ("PSR") was prepared and first disclosed to the parties on April 27, 2009. The PSR was revised on June 26, 2009 and again disclosed to both parties. The PSR calculated Defendant's offense level according to the statutory provision governing this offense and the United States Sentencing Guidelines (the "Sentencing Guidelines" or "Guidelines"), which include "special offense characteristics" that may elevate or reduce the offense level. Starting with a Base Offense Level of 18 pursuant to 18 U.S.C. § 2252A(a)(5)(B), Defendant received various elevations and reductions of this level under USSG §§ 2G2.2 and 3E1.1, resulting in a Total Offense Level of 28. The PSR also reflected that Defendant had a criminal history of zero, placing him in category I. According to 18 U.S.C. § 2252A(b)(2), the maximum statutory term of imprisonment for this offense is ten years. With an offense level of 28 and a criminal history category of I, the PSR calculated the advisory Guideline range to be 78 to 97 months of imprisonment. Defendant may also be placed on supervised release for at least five years and up to life. *See* 18 U.S.C. § 3583(k). Neither the Government nor Defendant submitted any objections to the PSR. In the absence of objections, the Court found that the facts contained in the PSR were accurate and that the advisory Guideline range was properly calculated.

-2-

Case 1:09-cr-00005-HSM-SKL   Document 34   Filed 09/30/09   Page 2 of 14   PageID #: 188

In advance of the sentencing hearing, Defendant's counsel filed a sealed Motion for Downward Variance in Sentencing and a Memorandum in Support on June 23, 2009 and attached the report of a psychosexual examination. (Court Docs. 15 & 16.) The examination was performed by Dr. James Meginley and the results were memorialized in a report dated June 22, 2009. Dr. Meginley determined that Defendant suffered from major depression, personality disorders, and anxiety disorder, and noted that Defendant needed intensive treatment for these conditions. Dr. Meginley characterized Defendant as a sexual addict rather than a sexual offender, recommended that treatment be geared towards rehabilitation, and recommended that Defendant follow a sex offender program to prevent any possibility of relapse. The report also included notes from Dr. Mary K. Radpour, the psychotherapist who started Defendant's treatment. Dr. Radpour noted that Defendant had progressed in his therapy thus far, but needed additional significant and continuing treatment to be able to function properly in society.

In Defendant's Memorandum in Support of his Motion for a Downward Variance, he asked the Court to impose a sentence outside the advisory Sentencing Guideline range after considering the factors listed in 18 U.S.C. § 3553(a). (Court Doc. 16.) Specifically, Defendant asserted that various mental health problems including depression and an addiction to legal pornography culminated in the actions that constituted this offense, that he was attempting to turn his life around and receive treatment prior to the FBI's initial contact, that he fully cooperated with the FBI and accepted responsibility for his actions, that he has no criminal history, that there is no indication that he ever had actual sexual contact with or solicited minors, and that he is not a sexual predator or pedophile. Defendant further asserted that he is not a threat to the community and that intensive

treatment is necessary to assist with his mental health problems and fully rehabilitate him from the already low risk of recidivism. Defendant acknowledged the seriousness of the offense, but claimed that there was no risk of additional harm to the public so long as Defendant is afforded the proper treatment.

The Government argued in its Response that Defendant should not receive a downward variance in his sentence because Defendant, like other individuals guilty of accessing and viewing child pornography, created a market for the material and indirectly led to the victimization of more innocent children. (Court Doc. 17, Response.) The Government further asserted that the characterization of Defendant as a "sexual addict" in the psychosexual examination by Dr. Meginley establishes that the public will be in danger due to this continuing addiction. (*Id.*) The Government acknowledged that Defendant cooperated fully with law enforcement and commended him for these actions, but encouraged the Court to impose an adequate punishment for this crime in order to recognize the interests of the victims involved and deter other individuals from acting in the same manner. (*Id.*)

To assist it in making a sentencing determination, the Court, on July 7, 2009, ordered a second psychological/psychosexual examination to be performed by the Center for Individual Family Effectiveness. (Court Doc. 20.) Both parties then submitted additional documents discussing the history of the Sentencing Guidelines as they relate to child pornography crimes and a trend of courts to sentence below the Guidelines. (Court Docs. 21, 25, & 26.) The final filing, Defendant's Reply to the Government's Sentencing Memorandum, contained a request to imprison Defendant in an appropriate facility for immediate treatment and impose a sentence that would extend only as long as necessary

to complete Defendant's psychological and psychosexual treatment. (Court Doc. 26.) The Court held a hearing on September 17, 2009 to address the Motion and the extensive filings of both parties.

At the September 17, 2009 sentencing hearing, the Defendant called Dr. Bertin Glennon to testify regarding Defendant's second psychological/psychosexual evaluation. Dr. Glennon testified that he conducted the evaluation on August 12, 2009 and diagnosed Defendant as suffering from major depression, social phobia, and a mixed personality disorder. Dr. Glennon stated that Defendant was not a pedophile and exhibited a low risk of sexual harm to others. Dr. Glennon further testified that Defendant needed treatment for his personality disorder and could receive the appropriate treatment in federal prison. It was Dr. Glennon's opinion that this treatment would likely have to take place over a noncontinuous period of two to four years. Dr. Glennon testified inconsistently regarding any imprisonment above and beyond his treatment; at first, he stated that any additional imprisonment would not have a negative or positive effect. Later in his testimony, however, he stated that there would probably be some decomposition of treatment if Defendant were imprisoned after the conclusion of treatment because Defendant's treatment needs to be intensive and consistent. Dr. Glennon acknowledged on cross examination that it was difficult to accurately estimate the necessary length of treatment and that there were no guarantees that this treatment would be permanent and successful in preventing Defendant from reoffending.

The Government called FBI Agent Scott Barker to testify regarding the images found on Defendant's computer. Agent Barker testified that there were 388 images and 124 videos on the computer and 50 images of actual known victims. Agent Barker also testified

that most of the images and videos depicted prepubescent children being forced to engage in sexual acts with adults. Finally, Agent Barker testified that some of the images and videos involved sexual acts performed on infants, and acknowledged that some were images in frequent circulation amongst those possessing child pornography.

The Court heard oral argument from both parties. Defendant, through counsel, outlined substantially the same arguments contained in his Memorandum but also pointed out that Defendant will be punished in any event because he will lose certain rights as a felon, will have to be registered as a sex offender for life, and will be under a term of strict supervision for some period of time. In addition, Defendant noted that he has been in jail for over six months to date and will continue to be removed from his family and educational and job prospects for an additional term of imprisonment while he receives treatment. Defendant therefore asked for a sentence of two to four years, reflecting Dr. Glennon's estimate of the time that it would take to fully treat Defendant. Defendant also asked for a reasonable term of supervised release not to exceed ten years. Defendant himself waived the right to allocute during the sentencing hearing, instead relying on his letter filed with the Court as a Supplement to the Motion. (Court Doc. 28.)

The Government argued that Defendant may be likely to recidivate due to his demonstrated mental health problems and that Defendant's actions were repulsive because of the disturbing nature of some of the images found on his computer. The Government pointed out that imprisonment for treatment alone would not be sufficient punishment and that the Defendant's needs must be balanced with the harm to the victims. The Government therefore asked the Court to impose a sentence of at least 60 months and up to the advisory Guideline range.

## II.     ANALYSIS

In *United States v. Booker*, 543 U.S. 220 (2005), the United States Supreme Court held that the United States Sentencing Guidelines were advisory rather than mandatory. *Id.* at 259-60. Nevertheless, the Court must still correctly calculate the advisory Guideline range as a preliminary step towards a sentencing determination. This range, however, no longer binds the Court. *See Gall v. U.S.*, 128 S. Ct. 586, 596 (2007). Instead, the Court must allow the parties to argue for a variance, review the individual facts of the case and assess the factors included in 18 U.S.C. § 3553(a), and determine if a sentence within the advisory range is appropriate. *Id.* at 596-97. If the factors support a sentence within the range, the Court may impose such a sentence; likewise, if the factors support a non-Guidelines sentence–one that either goes above the Guidelines or below–the Court has discretion to impose that sentence as well, provided there is some justification to support any variance. *Id.*

Defendant has moved for a downward variance in his sentence, claiming that a sentence within the 78 to 97 month advisory range is "greater than necessary" when the factors outlined in 18 U.S.C. § 3553(a) are considered. The Court must take these factors into account before imposing a sentence pursuant to *Booker* and *Gall*. 18 U.S.C. § 3553(a) reads, in part:

> (a) The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider -
>
> > (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> >
> > (2) the need for the sentence imposed -

-7-

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner . . .

18 U.S.C. § 3553(a). Defendant asserts that the nature and circumstances of this offense, the history and characteristics of the Defendant, and the factors to consider in determining an appropriate sentence weigh against imposing a sentence within the advisory range.

The nature and circumstances of the offense, as well as the history and characteristics of the Defendant, have been discussed at some length in the procedural and factual background of the case. The Court has taken notice of all these factors in its sentencing decision and incorporates those facts into its assessment of the factors contained in 18 U.S.C. § 3553(a)(2). The Court will analyze each § 3553(a)(2) factor in turn to fashion an appropriate sentence.

### 1. *Need for Just Punishment*

Section 3553(a)(2)(A) states that the "seriousness of the offense . . . respect for the law, and . . . just punishment" are necessary factors to consider when imposing sentence. All parties have acknowledged that the Defendant has committed a very serious offense. Congress has chosen to criminalize many child pornography-related crimes in a severe way, indicating an intent to make it a serious offense, and the Court recognizes that the

-8-

harm that results to innocent children victims as a consequence of creating a market for this material should be taken very seriously. As such, the Court finds that an appropriate sentence of incarceration is necessary to appropriately punish Defendant for the gravity of his crime.

Although Defendant has thus far demonstrated cooperation and acceptance of responsibility for his actions, Defendant still committed a serious crime and must endure some form of punishment. The Court finds that imposing a sentence that might consist almost exclusively of treatment alone will not suffice. It is virtually undisputed that Defendant needs extensive psychological treatment and will no doubt benefit from the treatment he can receive while in federal custody. It would not serve the goals of sentencing, however, if Defendant was imprisoned only for such time as is necessary to complete his treatment. The Court is particularly disturbed by the nature of some of the images contained on Defendant's computer. The described images and videos depicting infant children forced to participate in sexual acts with adults are repulsive to the point of depravity, and the Court must recognize the interests of these defenseless child victims when fashioning Defendant's sentence. Therefore, Defendant must be adequately punished for his actions above and beyond the period of expected treatment he will receive while imprisoned. It is true that Defendant will be punished by the mere existence of a felony conviction on his record and the necessity of registration as a sex offender for the remainder of his life; however, a serious crime warrants equally serious consequences. The Court weighs this factor in favor of adhering more closely to the range established by the advisory Sentencing Guidelines.

## 2. Need for Deterrence

The Court recognizes that the "adequate deterrence to criminal conduct" factor in 18 U.S.C. § 3553(a)(2)(B) is an absolutely crucial consideration when imposing a sentence in any case involving this type of offense. The possession of child pornography is, by nature, a relatively secretive and solitary crime, because defendants can maintain the pornographic material in their private homes. The crime can be fairly easily hidden from the eyes of law enforcement, and many individuals eventually convicted of these crimes are able to escape criminal charges over a period of years while they repeatedly violate the law. The Court must make it explicit that even mere possession of material depicting child pornography is a serious crime, and those who engage in this activity will be punished accordingly. The Court cannot impose any sentence that would signal even the slightest tolerance of this crime to the community. Those who actively and intentionally choose to violate the laws regarding the possession or receipt of child pornography should be made fully aware of the consequences of their conduct and the punishment that will await them upon conviction.

Granting a request for a shorter sentence that would consist primarily, if not solely, of extensive psychological treatment while in custody would not send the appropriate message to the community as to how these crimes will be punished. It instead could set a precedent that asserting mental health or psychological impairments will result in a lighter sentence that is only long enough to provide effective treatment. Certainly, imprisonment for any time constitutes punishment of some sort but, in this case, the treatment Defendant will receive in prison appears to be essential to his ability to lead a normal and productive life. Releasing Defendant at the conclusion of this treatment would not be an acceptable

way to punish Defendant or anyone else who violates child pornography laws because it does not signal to potential offenders the severity of the crime and its consequences. Therefore, the Court weighs this factor as favoring a sentence that, while perhaps not as long as that suggested by the advisory Guidelines, does not extend only for the anticipated period of Defendant's treatment while incarcerated.

### 3. Need to Protect the Public

The Court recognizes that one of the primary considerations in sentencing is the possibility of recidivism upon release. Section 3553(a)(2)(C) requires an assessment of the likelihood that the Defendant will commit future crimes. This is especially important in this case, because Defendant requires extensive psychological treatment, and what treatment he receives may be crucial to reduce his chances of committing the same or related crimes after he is released from imprisonment. Indeed, the Court finds that ongoing treatment could be the only effective and permanent way to protect the public from any future crimes of the Defendant, as successful treatment may be the only possible way for Defendant to be a law-abiding citizen.

The Court finds that imprisonment to afford Defendant treatment will be the best way to achieve the goals of this factor. The Court also finds that Defendant's arguments are compelling in regards to the fact that he never had sexual contact with children, did not solicit minors, and has not exhibited any characteristics indicating that he is a sexual predator or a pedophile. The Court further acknowledges the reports of Dr. Meginley and Dr. Glennon in determining that Defendant has a low to moderate risk of reoffending. The combination of circumstances present in this case and the anticipated treatment while imprisoned may very well be effective in reducing the chance of recidivism upon release.

-11-

Case 1:09-cr-00005-HSM-SKL   Document 34   Filed 09/30/09   Page 11 of 14   PageID #: 197

The Court also recognizes that there is some dispute as to whether imprisonment beyond a period of treatment will result in a reversal of Defendant's progress. Dr. Glennon testified in two different ways concerning this issue; first stating that such a period of imprisonment beyond treatment would have a neutral effect, and later testifying that there would be some decomposition of Defendant's progress if he were imprisoned past the end of the psychological and sex offender treatment. The Court will therefore weigh this factor in favor of a non-Guidelines sentence, finding that there is some evidence that Defendant is not a great threat to the public–or at least that treatment while imprisoned will lessen any chance that he will be a threat to the public upon release–and that imprisonment for a lengthy period beyond that necessary for treatment may reverse Defendant's progress and lead to recidivism.

### 4. Need for Effective Treatment

It is undisputed that Defendant requires extensive psychological treatment, and it is for that reason that the Court will recommend that Defendant participate in the Bureau of Prisons' Sexual Offender Treatment Program. The Court will also recommend that Defendant be placed in a facility where he will receive the appropriate mental health evaluations and treatment to address his other evident psychological conditions. The Court credits the reports of Dr. Meginley and Dr. Glennon that extensive treatment may assist Defendant to a sufficient degree to afford him a productive and law-abiding life upon his release, while acknowledging that there is no guarantee that such treatment will definitely serve its intended purpose. The Court finds that a period of imprisonment for the purpose of treatment is absolutely necessary given the circumstances of this case. Because Dr. Glennon testified inconsistently regarding imprisonment beyond a period of

treatment, the Court views this factor as weighing somewhat in favor of a non-Guidelines sentence because of the possibility that extended imprisonment may reduce the effectiveness of Defendant's treatment.

## III. CONCLUSION

After considering the advisory Guideline range, the facts of this case, and weighing the factors in 18 U.S.C. § 3553(a), the Court finds that a sentence within the Guidelines is more than that necessary to achieve the aims of sentencing. The Defendant must be adequately punished with a sentence that will deter future child pornography crimes, but there are certain circumstances–namely, Defendant's lack of criminal history, serious mental health conditions underlying the offense that require extensive treatment, and potentially low risk of reoffending–that weigh in favor of a sentence that falls outside the advisory range. Therefore, the Court **GRANTS** Defendant's Motion for Downward Variance in Sentencing [Court Doc. 15] to the extent that it requests a sentence below the range recommended by the advisory Sentencing Guidelines.

The Court concludes that the factors in 18 U.S.C. § 3553(a)(2) warrant a two level reduction in Defendant's offense level. Under the advisory Guidelines, the sentence range for an offense level of 26 and a criminal history category of I is 63 to 78 months. Accordingly, the Court finds that a sentence of 63 months imprisonment and 25 years of supervised release is "sufficient, but not greater than necessary" based on the particular facts of this case. 18 U.S.C. § 3553(a). This sentence is appropriate to acknowledge the seriousness of the crime, provide sufficient punishment and deterrence, protect the public from the possibility of future crimes of the Defendant, and afford Defendant the necessary

-13-

treatment.

**SO ORDERED** this 30th day of September, 2009.

                                                    */s/Harry S. Mattice, Jr.*
                                                   HARRY S. MATTICE, JR.
                                        UNITED STATES DISTRICT JUDGE